FILED-WD
2003 FEB -3 PM 12:41
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| KELLY BAIRD, Plaintiff, | ) | |
| v. | ) | Case No. 01 C 50228 |
| BOARD OF EDUCATION FOR WARREN COMMUNITY UNIT SCHOOL DISTRICT NO. 205, JO DAVIESS COUNTY, ILLINOIS, MONICA STEPHAN, ANALISA CLEARY, JUDY GATES, MARY VINCENT, JOSEPH GREEN, DONALD HILL, and ROBERT LETHLEAN, | ) | Hon. Philip G. Reinhard<br>Magistrate Judge P. Michael Mahoney |
| Defendants. | ) | |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RESPONSIVE TO THIS COURT'S MINUTE ORDER OF JANUARY 10, 2003 (MULTI-YEAR EMPLOYMENT CONTRACT/MATHEWS BALANCING FACTORS)**

## I INTRODUCTION.

The parties have fully briefed plaintiff's Motion for Partial Summary Judgment. The thrust of plaintiff's Motion is that the procedures used by the defendants in firing plaintiff for cause at the conclusion of the first year of his three year employment contract violated plaintiff's procedural due process rights. On January 10, 2003, this Court issued a Minute Order (Exhibit 1 attached hereto) directing the parties to file a Supplemental Memorandum specifically addressing the Mathews balancing factors in light of plaintiff's property interest arising from a multi-year employment contract. Our analysis follows.

42

## II BAIRD HAS A PROPERTY INTEREST IN CONTINUED EMPLOYMENT DURING THE TERM OF THE CONTRACT.

As this Court most recently noted in Roser v. Rockford Park District, 02C50079, 2002 WL 31757551, procedural due claims involve a two step inquiry. First, the Court must decide if the plaintiff has a protected property interest in his public employment position; if so, then the Court turns to the issue of whether the employee received the process that was due. In the present case, it is undisputed that the Employment Contract (Exhibit 2 hereto) gave Board a property interest in continued employment during its term. Pursuant to Section E, the contract could not be terminated except for cause. As this Court noted in Roser, a "legitimate claim of entitlement to continued state employment is 'typically rooted in ... contractual language indicating that the employee cannot be terminated but for cause'" Id., citing Lalvani v. Cook County, 269 F.3d 785, 791 (7th Cir. 2001). Defendants have never disputed this conclusion.[1] Since this Court has requested a focus on the Mathews balancing factors, that analysis presupposes the existence of a property interest. Accordingly, we turn to the balancing factors themselves.

## III THE MATHEWS BALANCING FACTORS.

Once it is determined that a public employee possesses a property interest, then the extent of process which is due is analyzed under the three-part balancing test first articulated in Mathews v. Eldridge, 424 U.S. 319 (1976). The Mathews factors are:

---

[1] See also Kelly v. Municipal Court, 852 F.Supp. 724, 738 (S.D.IND. 1994) (public employee hired pursuant to a contract has a property interest "safeguarded by due process during the term of the contract."

- "First, the private interests that will be affected by the official action;"
- "Second, [i] the risk of an erroneous deprivation of such interests through the procedures used and [ii] the probable value, if any, of additional or substitute procedural safeguards;"[2] and finally,
- "The government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

424 U.S. at 335, 96 S.Ct. at 903. Due process in this context is a flexible matter. In "the realm of fact-finding," the function of legal process is to "minimize the risk of erroneous decisions." Heller v. Doe by Doe, 509 U.S. 312, 332 (1993). See also Fuentes v. Shevin, 407 U.S. 6797 (1972) (Due process is designed to "prevent unfair and mistaken deprivations").

With that background, we turn to each of the Mathews balancing factors in the context of this case.

## IV BAIRD HAS A SIGNIFICANT AND SUBSTANTIAL PRIVATE INTEREST WHICH WAS ADVERSELY AFFECTED BY THE DEPRIVATION.

To understand the substance and significance of Baird's private interest, it is appropriate to review applicable provisions of the Illinois School Code. Pursuant to 105 ILCS 5/24-11 and 24-12, Illinois has a statutorily based tenure system for public educational employees such as teachers and administrators. The teacher obtains tenure after a probationary period of up to four years, after which she cannot be dismissed except for cause subject to a statutorily prescribed due process hearing providing notice, confrontation and cross-examination. See Section 24-12.

---

[2]Our quotation breaks down the second factor into two bracketed sub-factors.

These statutory procedures are not available to an individual who becomes a school superintendent pursuant to a multi-year contract. Typically, an individual desirous of becoming a school superintendent works his way up through the ranks of teacher, principal, dean, central office administrator, and assistant superintendent. When a superintendency in another school district becomes available, the employee gives up his tenure in his existing district in order to take the new job.

The employment contract is entered into pursuant to Section 10-23.8 of the School Code. 105 ILCS 5/10-23.8. Section 23.8 authorizes a multi-year contract. The statute specifically provides that by accepting the terms of a multi-year contract, the superintendent "waives all rights granted him under Section 24-11 through 24-16 of this Act..." An employee like Baird who enters upon a new superintendency foregoes all of his tenure protections from his prior district. His job protection is based solely on the terms of his Employment Contract.

It is universally recognized that an employee with a property interest in continued employment has a substantial property interest. Brock v. Roadway Express, 41 U.S. 252, 264 (1987) (describing at various instances an employee's interest in retaining his job as being "substantial"). The Seventh Circuit has emphasized that the property interest which is implicated when a public employee is terminated "is an especially weighty one." Birdsell v. Board of Fire & Police Commissioners, 854 F.2d 204, 208 (7th Cir. 1988).

This interest is even more substantial in the case of a school superintendent facing dismissal during the first year of a multi-year contract. This is not merely a suspension or a demotion. Baird cannot fall back on his tenure and return to his prior teaching job. The protection of the Employment Contract is the only protection the superintendent possesses. As a matter of common sense and

workplace reality, when a high ranking public employee such as a superintendent of schools is dismissed for cause during the first year of a multi-year contract, his career is devastated. His prospects of obtaining subsequent employment in public education administration in Illinois are greatly diminished. The salary value alone of the additional two years on plaintiff's contract was close to $200,000.

Any public employee with a protected property interest has a substantial interest in continued employment. When that employee is a high ranking public employee such as plaintiff, a termination for cause is a career killer. The weightiness and significance of this private interest is not diminished because the property interest is for a term of years–it is heightened because the career stakes are so high.

Accordingly, plaintiff submits that his private interest is extremely weighty. This significance is not diminished because his property interest is "only" in continued employment for a period of three years. A career is at stake. The private interest Baird has in a fair hearing is at least as significant as that of a professional employee whose "lifetime tenure" is jeopardized by termination for cause.

As this Court is aware, one of the cases upon which we place significant reliance is the Tenth Circuit's decision in McClure v. Independent School District No. 16, 228 F.3d 1205 (10th Cir. 2000). McClure involved a school principal being dismissed for cause based on serious charges. McClure held that plaintiff had the same due process to notice of witnesses, cross-examination, and confrontation we are seeking in this case. In McClure, Ms. McClure's contract was for a term of only one year. Plaintiff's contract in this case is for three years. The Illinois Appellate Court decision upon we rely in part, Colquitt v. Rich Township High School, 298 Ill.App.3d 856 (1st Dist. 1998) involved a student expulsion for one year.

Thus, we believe the cases make clear that the significance of a property interest in continued employment is not affected by the fact that the property interest is for a term of years rather than one for "lifetime employment." When it comes to the stature of the employment position involved in this case, a termination has a long-term impact on school administrators. The significance of this private interest is not diminished by the property interest being for a term of years.

## V. UNDER THE CIRCUMSTANCES OF THIS CASE, THE RISK OF AN ERRONEOUS DEPRIVATION OF SUCH INTEREST THROUGH THE PROCEDURES USED WAS HIGH. ADDITIONAL OR SUBSTITUTE PROCEDURAL SAFEGUARDS WOULD HAVE HAD SIGNIFICANT VALUE.

The second Mathews factor asks two questions. First, did the procedures used create a risk of an erroneous deprivation of the property interests? Second, would additional or substitute procedures have been of probable value to aid the decisionmakers in avoiding an erroneous deprivation? Before separately analyzing each of these subfactors, it is extremely important to bring this Court's attention Wainscott v. Henry, ___ F.3d. ___, 2003 WL 132552, decided on January 17, 2003. In the present case, defendants are arguing that all plaintiff was entitled to was a minimal Loudermill hearing. In Wainscott, the Seventh Circuit held that "[a]s a public employee Wainscott had a constitutional right 'to a fair hearing before being fired and that includes the right to be shown the evidence on which the tribunal has relied.'" The Court cited its 1999 decision in Swank v. Smart, 898 F.2d. 1247, 1256 (7th Cir. 1990).

This citation to Swank is significant for two reasons. First, as a substantive matter, Baird was never "shown the evidence on which a tribunal has relied."[3] As a procedural matter, the affirmation

---

[3]In this case, since much of the "evidence" against Baird was in the form of anonymous accusations, the Board's refusal to identify the accusers is a refusal to "show [] the evidence on which [the] tribunal has relied."

of Swank underscores the error of the Board's decision to provide Baird only a minimal Loudermill hearing. It is undisputed that there was only one hearing conducted by the Board. As Swank emphasizes (at 1256):

> A public agency can fire an employee on the basis of notice (which there was here) and a probable cause hearing, provided it offers him a full hearing afterward. [Citation] Only if there is no provision for a post-termination hearing must the pre-termination hearing provide all the procedural safeguards to which due process entitled a tenured public employee.

See also Vukadinovich v. Board of School Trustees, 978 F.2d. 403, 411 (7th Cir. 1992). Thus Wainscott and Swank fully dispose of the Board's contention regarding what due process requires in this context. The flawed pre-termination hearing was the only hearing Baird received. Due process requires more.

**A. Because The Charges Against Baird Were Largely Based On Factual Matters Involving Credibility Determinations, Hearsay Assertions, and Matters Reported By Unnamed Employees To Individual Board Members, The Procedures Used In This Case Carried A High Risk Of Erroneous Deprivation.**

The causes for Baird's termination are found in the Board's narrative evaluation of Baird. (Exhibit 3). The evaluation is replete with conclusions about Baird's dissatisfactory performance based on what others reported to one, some, or all of the Board members.[4] In response to Baird's demand for full due process, the Board (i) refused to disclose the names of any of these accusers; (ii) refused to identify the board members to whom the accusations were reported, (iii) refused Baird's request that his accusers be at the hearing so he could confront and cross-examine them; and (iv) refused to allow anything but the most truncated of examination of some of the individual board members.

---

[4]The evaluation narrative (Exhibit 3) and our request for information (Exhibit 4) demonstrate the extremely fact-intensive nature of the charges against Baird.

Under these circumstances, the risk of erroneous deprivation is high. The reporting employees may have been wrong; they may have been lying; the board members may have misunderstood them; the board members may have been lying. When the deprivation of property depends on matters of credibility, the risk of erroneous deprivation is significant. Doyle v. Camelot Care Centers, 305 F.3d 603, 619 (7th Cir. 2002); Goldberg v. Kelly, 397 U.S. 254, 268-9 (1970) ("particularly where credibility and veracity are at issue, as they must be in many termination proceedings, written submissions are a wholly unsatisfactory basis for decision...." Welfare termination required the recipient "to confront [and] cross-examine adverse witnesses."). Cf. Chauffeurs Training School v. Riley, 967 F.Supp. 719, 730 (N.D.N.Y. 1997) (when a determination is made upon documentary evidence, "there is less reason to fear that lack of a formal evidentiary hearing will result in an erroneous decision.").

Mathews (at 344) makes it clear that when "issues of witness credibility and veracity" are "critical to the decision making process," the risk of erroneous deprivation is high.

**B. Providing Baird With The Additional Procedural Safeguards Of Notice Of The Identity Of His Accusers, And An Opportunity To Confront And Cross-Examine Them Would Have Been Of Significant Value In Avoiding An Erroneous Deprivation.**

The additional procedural protections of notice, disclosure of adverse witnesses, and the opportunity to confront and cross-examine would have been of significant value to the fact-finding process.[5] Cross-examination is the principal means of assessing the credibility of a witness whose testimony is either false or inaccurate. The evaluation and charges were built on such testimony. Professor Wigmore's assertion holds especially true here: "'The belief that no safeguard for testing

[5]For purposes of our Partial Summary Judgment Motion, the Court must assume the Board Members were impartial and were actually interested in finding the truth, and making a fair decision.

the value of human statements is comparable to that furnished by cross-examination and [that] no statement ... should be used as testimony until it has been probed and sublimated by that test, has found increasing strength in lengthening experience.'" Greene v. McElroy, 360 U.S. 474, 498 (1959). In this case, Baird was not even given the identity of his accusers, much less be given the opportunity to confront, examine or otherwise rebut the allegations which found their way into the evaluation and charges.

Judge Lindberg most recently discussed this issue in Woods-Clendenning v. Board of Education, 2002 WL 1732921, N.D.ILL 2002. Woods dealt with a statutory entitlement similar to that found in the present case (the plaintiff was a school principal with an employment contract). The Court found that providing a full panoply of procedural due process rights was not necessary on a pre-termination basis since the question was one of statutory interpretation (the principal was hired on a multi-year basis on a contract which was not performance based, as required by law). In so holding, the Court emphasized that "[u]ndoubtedly plaintiff has a substantial interest in receiving a fair hearing.... A full blown hearing with cross-examination and confrontation of adverse witnesses is useful in cases requiring factual determinations, where there are issues of credibility."

Providing these customary procedural rights would have certainly been of additional value in allowing Baird to defend himself and hence giving the Board the means to make an informed and fair factual decision. As the Seventh Circuit emphasized in Cooper v. Salazar, 196 F.3d 809 (7th Cir. 1999) (internal citations omitted):

> ... Confrontation and cross-examination are important procedural safeguards, especially where factual determinations are made. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." ... This requirement may be triggered when the function of the proceeding is to adjudicate rather than merely investigate claims.

Id. at 815. Simply stated, identification of adverse witnesses and the opportunity to meaningfully contest, confront and cross-examine one's accusers are invaluable and constitutionally required in a setting such as this.

## VI PROVIDING THESE ADDITIONAL PROCEDURAL SAFEGUARDS WOULD NOT HAVE IMPOSED AN UNREASONABLE FISCAL OR ADMINISTRATIVE BURDEN ON THE BOARD OF EDUCATION.

Providing these additional procedures would have entailed little or no additional fiscal or administrative burden on the Board of Education. First, providing Baird with the names of the various accusers (both on and off the Board of Education), would have cost the Board nothing. The Board had only to respond to Baird's written request for names and information. This would have given Baird the opportunity to speak with these people and perhaps bring some of the witnesses to the hearing to show the Board that it misinterpreted or misjudged what the witnesses had allegedly stated. The Board steadfastly refused to provide even this minimal disclosure.

Second, the Board could easily have provided for confrontation and cross-examination. The Board could have endeavored to have the accusing employees present at the hearing, notwithstanding their claim it had "no subpoena power."[6] To be sure, the logistics of arranging for the accusers to testify (including Board Members) might have resulted in extending the hearing. But that is certainly not an unreasonable burden when measured against plaintiff's loss of employment and jeopardy to his professional career. The only burdens would have been (i) the additional time to convene and complete the hearing; and (ii) additional attorneys fees which the Board would have to pay to its

---

[6]In Colquitt and other cases involving one or two year school explusions, the Court requires the School District to either produce the key witnesses at the hearing or show the failure is attributable to "compelling reasons." Stone v. Prosser Consolidated School District, 971 P.2d 125 (Wash.App. 2001).

lawyer. Those expenses, of course, are dwarfed by the Board's litigation expenses in the present action.

The District had the means of dealing with any additional administrative burdens resulting from the pendency of the proceedings against the Superintendent. Clearly, the Board had the authority to appoint one or more administrators to perform the duties of the Superintendent in his absence while the hearing was pending. This "burden" is no different than had the Superintendent been unavailable for a couple of months due to injury or illness.

Plaintiff submits the fiscal or administrative burdens that the additional procedural safeguards would have entailed are not significant. They certainly do not outweigh the benefit that a full hearing would have provided to protect a significant property interest. The full hearing would have provided the Board with a complete basis upon which to base its decision of whether or not to terminate the Employment Contract.

## VII McCLURE V. INDEPENDENT SCHOOL DISTRICT NO. 16 STRIKES THE APPROPRIATE DUE PROCESS BALANCE

As we pointed out in our earlier Memoranda, the Tenth Circuit decision in McClure v. Independent School District No. 16, 228 F.3d 1205 (10th Cir 2000) strikes the appropriate balance. Both cases involved high ranking educational employees with a property interest created by virtue of an employment contract. Both cases involved termination based on accusations of others. Both cases involved serious accusations attacking the fitness, morality and honesty of the individual employee.

In McClure, the employee at least had the benefit of seeing affidavits from some of her accusers. Baird did not even have this information. In McClure, the district did present live

testimony from three witnesses. The Board in this case offered no testimonial evidence. We respectfully submit that because these cases are compellingly similar this Court should strike the balance in a manner similar to that struck by the Tenth Circuit. In words which could have been written for this case:

> In this case ... the termination decision was based on charges that would stain the reputation of an elementary school principal and threaten her livelihood.... These accusations, which the Board ostensibly considered sufficiently serious to warrant dismissal, were likewise sufficiently serious to warrant cross-examination.... The uncontroverted evidence of the seriousness of the charges and the risk of error, particularly under the circumstances existing at the hearing itself, support the Court's conclusion that due process required cross-examination here.

228 F.3d at 1211.

## VIII OUR POSITION IS SUPPORTED BY THE CLEAR WEIGHT OF AUTHORITIES THROUGHOUT THE COUNTRY.

In the course of our additional research for this Memorandum, we have discovered the decision of the Tennessee Court of Appeals in Case v. Shelby County Civil Service Merit Board, 2202 WL 1592536 (Tenn.Ct.App., July 19, 2002). Although this case involves a civil service employee as opposed to an employee with a long-term contract, the Court of Appeals conducted the exact analysis requested by this Court. We attach a copy of the Case opinion as our Exhibit 5.

After reviewing cases throughout the country and articulating the Mathews factors, the Court concluded (at 5, 6):

> ... We believe the Supreme Court's observations on due process mandate that where the facts giving rise to an employee's termination are in dispute, or where the gravity of termination as opposed to less severe disciplinary measures is reasonably challenged, due process requires that the employee be afforded the opportunity to confront and cross-examine the witnesses against him.... We agree with our sister jurisdictions that have held that where the decision to terminate employment turns on determinations of issues of fact, due process requires the opportunity to confront and cross-examine witnesses. [citations] We accordingly hold that due process

> mandates that a classified civil service employee whose employment may be terminated only for cause must be afforded the opportunity to confront and cross-examine the witnesses against him at the post-termination hearing where the facts giving rise to termination are in dispute or where the severity of the discipline challenged.

The Court's Mathews balancing is nearly identical to that which we have articulated above:

> This holding is supported by application of the Mathews factors. First, the private interest affected is substantial. The loss of one's means of livelihood is accentuated. The questionable circumstances of a "for cause" dismissal. Such a termination could have a considerable impact on the employee's chances for future employment. [citation] Second, the value of the right to confront and examine one's accusers where the factual elements are in dispute is implicit in our adversarial system and the deference we accord the fact finders's the fact finders determination of issues such as witness credibility and material fact.

We respectfully submit the clear weight of authority as evidenced by Case supports our position.

## IX. CONCLUSION

For the reasons set forth above, plaintiff respectfully submits that when a public body terminates a multi-year employment contract for cause based on serious charges which depend in substantial part upon the credibility of the accusers, procedural due process requires more than the bare Loudermill pre-termination process offered by the Board of Education. The Mathews balance tips in plaintiff's favor. To paraphrase the Colquitt Court (298 Ill.App.3d at 865):

> In sum, in [termination] proceedings, the private interest is commanding; the risk of error from the lack of adversarial testing of witnesses through cross-examination is substantial; and the countervailing governmental interest favoring the admission of hearsay statements is comparatively outweighed. [citing Mathews] Evaluation of the three Eldridge factors, therefore, compels the conclusion that the expansive use of accusatory hearsay, as was done in the instant case, is inconsistent with and violative of due process.

McClure affirmed summary judgment in favor of plaintiff. We respectfully request this Court do the same.

KELLY BAIRD, Plaintiff

By: ______________________
JOHN B. MURPHEY
One of his Attorneys

JOHN B. MURPHEY
ARDC#1992635
ROSENTHAL, MURPHEY & COBLENTZ
30 No. LaSalle - Suite 1624
Chicago, IL 60602
Teleph # (312) 541-1072
Fax # (312) 541-9191

G:\rmcj\SD205-Baird\PltfSuppMemoSMSJ.wpd