FILED
JAN 1 8 2005
MICHAEL W. DOBBINS, CLERK
UNITED STATES DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| KELLY BAIRD, Plaintiff, | ) | |
| v. | ) | Case No. 01 C 50228 |
| BOARD OF EDUCATION FOR WARREN COMMUNITY UNIT SCHOOL DISTRICT NO. 205, JO DAVIES COUNTY, ILLINOIS, MONICA STEPHAN, ANALISA CLEARY, JUDY GATES, MARY VINCENT, JOSEPH GREEN, DONALD HILL, and ROBERT LETHLEAN, Defendants. | ) | Hon. Philip G. Reinhard<br>Magistrate Judge P. Michael Mahoney |

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
FILED
JAN 18 2005
KENNETH S. GARDNER, CLERK
BY DEPUTY CLERK

**MOTION FOR ENTRY OF ORDER OF**
**SUMMARY JUDGMENT AS TO LIABILITY**
**ON COUNT II's DUE PROCESS CLAIM**

Now comes Kelly Baird, plaintiff herein, ("Baird") by his attorney John B. Murphey and pursuant to FRCP 56, and pursuant to the Opinion of the Seventh Circuit Court of Appeals in this cause (the "Opinion"), moves this Court for entry of summary judgment in Baird's favor and against all defendants as to Baird's Count II Procedural Due Process claim. In support of this Motion, Baird states:

1. Count II of Baird's Complaint alleges that the procedures used by defendants in connection with the termination of Baird's employment agreement (the "Agreement") violated procedural due process.

2. Baird filed a motion for partial summary judgment as to this issue.

3. This Court denied Baird's motion and entered summary judgment in favor of the defendants.

4. This Court's Order has been reversed, 389 F.3d (7th Cir. 2004) (the "Opinion"). The Opinion holds that the procedures utilized by defendants in connection with the termination of the Agreement violated Baird's procedural due process rights in a number of manners. A copy of the Opinion is attached hereto as Exhibit 1.

5. The mandate issued on January 6, 2005. Based on the direction of the Opinion, Baird is entitled to the entry of summary judgment in his favor as to liability on Count II's Procedural Due Process claim.

WHEREFORE, Baird respectfully prays that this Court enter summary judgment as to liability on Baird's procedural due process claim and further prays that this Court set this matter down for further proceedings, including the submission of a final pretrial order and a trial in this cause. In addition to a trial on damages as to the procedural due process violation, Baird is entitled to a trial on his breach of contract claim.

KELLY BAIRD

By: ______________________
John B. Murphey

John B. Murphey
ARDC#1992635
Rosenthal, Murphey & Coblentz
30 No. LaSalle - Suite 1624
Chicago, IL 60602
Teleph # (312) 541-1072
Fax # (312) 541-9191

G:\rmcj\SD205-Baird\Remand\MotEntryOderSJ.wpd

# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 03-3630

KELLY BAIRD,

*Plaintiff-Appellant,*

*v.*

BOARD OF EDUCATION FOR WARREN COMMUNITY UNIT SCHOOL DISTRICT NO. 205, JO DAVIESS COUNTY, ILLINOIS, MONICA STEPHAN, ANALISA CLEARY, JUDY GATES, MARY VINCENT, JOSEPH GREEN, DONALD HILL, and ROBERT LETHLEAN,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the Northern District of Illinois, Western Division.
No. 00 C 50228—**Philip G. Reinhard**, *Judge.*

---

ARGUED SEPTEMBER 14, 2004—DECIDED NOVEMBER 12, 2004

---

Before CUDAHY, ROVNER and WILLIAMS, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Here we confront the question whether a state breach of contract action provides adequate due process to protect the rights of a school superintendent facing termination, whose pre-termination hearing fell short of due process requirements. For the reasons to be set forth, we conclude that, in the circumstances presented, it does

EXHIBIT
tabbies
1

not. We also hold that the superintendent to be terminated did not waive his procedural due process claim by attending his pre-termination hearing only to object to its procedures. Accordingly, we reverse.

I.

The parties to this conflict are the dual centers of authority that guide public education throughout the country. On the one hand is the school board, representing the people, and on the other hand, the school board's selected operating leader of the schools, the superintendent. In 2000, plaintiff Kelly Baird was hired by the Warren County School District No. 205 Board of Education to serve as Superintendent and Principal under a three-year contract that provided he could be dismissed only "for cause." (Superintendent/Principal Employment Contract at A.7.) The contract broadly defined "cause" as "any conduct, act, or failure to act by the Superintendent which is detrimental to the best interests of the School District." (*Id.* at A-8.) The contract also provided that reasons for discharge were to be given in writing to the Superintendent, who would then be entitled to notice and a pre-termination hearing before the Board to discuss the merits. (*Id.*)

Early in the school year, Baird found himself under close scrutiny by certain Board members, who in conjunction with their observations, began to collect a variety of deprecatory comments about Baird and his activities from secretaries, teachers and other district employees. This on-the-sly investigation of the new Superintendent continued throughout the school year until April of 2001, when the accumulated tidbits of derogation were distilled into the form of Baird's annual performance review. Pursuant to the contract, on April 18, 2001, the Board presented Baird with its evaluation of his performance and a letter that notified him of its intent to terminate him for cause for the reasons contained

in the evaluation and advised him of a hearing to consider his termination to take place on May 16, 2001.

Upon receiving this letter, Baird contacted his attorney, who promptly responded to the Board by letter requesting a continuance, copies of underlying documents, the names of individuals who had provided information included in the employment evaluation and the recusal of certain "biased" Board members who had led the investigative efforts against Baird. The Board in its reply denied these requests and stated further that it would not call witnesses, that it would not identify the individuals whose claims had provided the substance of the employment evaluation, that it could not compel any district employees to attend the hearing, that Baird was only entitled to "notice and the opportunity to be heard" and that Baird could question Board members only as to issues about which those members had spoken. In the final communication between the parties, which took place on the day of the hearing, Baird's attorney objected to the hearing procedures specified by the Board as unfair. That evening, when the Board convened to discuss his termination, Baird appeared with his attorney to protest what he claimed to be contractual and due process violations, and he then departed. The Board proceeded to consider Baird's termination in his absence, and predictably voted to end what had become an acrimonious employment relationship. Thereafter, it forwarded to Baird a copy of its Resolution of Termination.

Having been fired without receiving what he considered to be a fair hearing, Baird brought an action in state court seeking damages against the Board pursuant to 42 U.S.C. § 1983, alleging that the Board's termination procedures violated his right to procedural due process. Baird claimed that certain Board members were biased against him and could not have served as neutral decision makers. He also asserted a breach of contract claim under Illinois law. After the Board removed the case to federal court, Baird filed a

motion for partial summary judgment as to liability on his due process claim alleging an insufficient hearing, and the Board and Board members filed a motion for summary judgment on all claims. Thus, there were cross-motions on all issues save the issue of biased decision makers.

The district court granted the Board's motion and declined to exercise supplemental jurisdiction over Baird's common law breach of contract claim, remanding it back to state court. Citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985), the District Court stated that, provided there was a full due process hearing after termination, a pre-termination hearing need only provide notice of the charge, an explanation of the basis of the charge and an opportunity to respond. Baird's pre-termination hearing had satisfied these requirements. The district court concluded that here the state suit for breach of contract met due process requirements. In addition, the district court rejected Baird's allegations of bias, finding that his evidence had not overcome the presumption that Board members were acting in the public interest and that their concerns had stemmed from Baird's job performance and not personal animosity.

The issue here is whether a state breach of contract suit provides due process if the pre-deprivation hearing does not. We also turn to the question whether a public employee waives the right to challenge a pre-termination hearing on due process grounds when he attends the hearing only to object to its procedures.

## II.

In reviewing a grant of summary judgment, we review the district court's determination *de novo*. *New Burnham Prairie Homes, Inc. v. Vill. of Burnham*, 910 F.2d 1474, 1477 (7th Cir. 1990).

A.

We agree with the district court's determination that the Board members' decision to terminate Baird was not tainted with bias. While the conduct of certain Board members appears to have been petty and maladroit, this seems to have been more a matter of modus operandi and style than of substantial prejudice. We are not persuaded, however, that the Board's procedures were entirely fair. The truncated pre-termination hearing afforded to Baird could comport with due process only if he received full due process promptly after termination. The error here was in determining under what circumstances a breach of contract suit can afford due process.

There can be no due process without "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). A hearing "appropriate to the nature of the case" must precede the "deprivation of life, liberty or property." *Loudermill*, 470 U.S. at 541 (internal citations omitted). A court considering what process is due in a specific situation must weigh three factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 545.

1.

The Supreme Court has long recognized that a public employee can have a constitutionally protected property interest in continued employment; such interests "are created and their dimensions are defined by existing rules or

understandings that stem from an independent source such as state law . . . ." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Colburn v. Tr. of Indiana Univ.*, 973 F.2d 581, 589 (7th Cir. 1992) ("Property interests exist when an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met."). Applying the *Mathews* test to determine that terminated school district employees were not entitled to full pre-termination hearings in *Loudermill*, the Supreme Court stated that a pre-termination hearing need only be "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 546. The Court's holding, however, rested on the fact that the terminated employees were entitled to a post-termination hearing before the Ohio Personnel Board, and the Court cautioned that "the existence of post-termination procedures is relevant to the necessary scope of pre-termination procedures." *Id.* at 546-47.

Our own Seventh Circuit precedent likewise establishes that, when there is an opportunity for a full post-termination hearing, due process does not require an employer to provide full "trial-type rights" such as the right to present or cross-examine witnesses at the pre-termination hearing. *Staples v. City of Milwaukee*, 142 F.3d 383, 387 (7th Cir. 1998). *See also Head v. Chicago Sch. Reform Bd. of Tr.*, 225 F.3d 794, 803 (7th Cir. 2000) (when full post-termination procedures are available, public employer must provide a public employee with a protected property interest with pre-termination notice, explanation of evidence and a chance to tell his side of the story).

The issue in the case before us is whether a post-termination lawsuit for breach of contract can remedy the full due process deficiency in the pre-termination proceedings. *Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001), is

the leading Supreme Court case addressing this question. With respect to *Lujan*, the question of when a judicial remedy like this provides adequate post-termination due process, as the district court found, is elusive. A fine line distinguishes factual scenarios in which a judicial remedy for breach of contract is adequate from those in which it is not. Not all injuries are equal, and not all parties can be made whole through a breach of contract action. The somewhat obscure quality that separates one from the other is important and yet eludes precise definition. The Supreme Court has referred to this mysterious element as a "present entitlement," and identifies cases involving this factor as ones in which "the claimant was denied a right by virtue of which he was presently entitled either to exercise ownership dominion over real or personal property, or to pursue a gainful occupation." *Lujan*, 532 U.S. at 196. *See also DeBoer v. Pennington*, 287 F.3d 748, 750 (9th Cir. 2002) (quoting *Lujan*'s definition of "present entitlement") and Canby, J., concurring (distinguishing *Perry v. Sindermann*, 408 U.S. 593 (1972), which involved, like the present case, the due process protection of a personal property interest in employment).

A present entitlement is immediately distinguishable from the contractual interests dealt with in *Lujan* and its progeny. In *Lujan*, the state of California withheld funds from a public works subcontractor and imposed penalties after receiving notice that the subcontractor had violated provisions of the state Labor Code. The Supreme Court characterized the subcontractor's interest as merely a contractual interest, a "deprivation of payment that it contends it is owed under a contract" that could be adequately protected through a breach of contract suit. *Lujan*, 532 U.S. at 196. Moreover, the Supreme Court contrasted the subcontractor's interest with two illustrative examples of present entitlements in the employment context:

> In *Barchi* [*Barry v. Barchi*, 443 U.S. 55 (1979)] we held that a racetrack trainer suspended for 15 days on sus-

> picion of horse drugging was entitled to a prompt post-deprivation administrative or judicial hearing. 443 U.S. at 63-64. And in *Mallen*, [*FDIC v. Mallen*, 486 U.S. 230 (1988)] we held that the president of a Federal Deposit Insurance Corporation (FDIC) insured bank suspended from office by the FDIC was accorded due process by a notice and hearing procedure which would render a decision within 90 days of the suspension. 486 U.S. at 241-243. See also *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337 (1969) (holding that due process requires notice and a hearing before wages may be garnished).

*Id.*[1] The postdeprivation remedies appropriate to the deprivation of an interest to which there is a present entitlement are characterized by promptness and by the ability to restore the claimant to possession. The underlying concept seems to be that the remedy is available before the loss has become complete and irrevocable.

A state law breach of contract action is not an adequate post-termination remedy for a terminated employee who possesses a present entitlement and who has been afforded only a limited pre-termination hearing. *Id.* While it does provide a species of due process, a lawsuit does not satisfy the requirement of promptness, which is essential if the employee is to pursue time-sensitive remedies such as reinstatement. While there is no specific time frame within which a hearing must be held to qualify as "prompt," lack of a speedy resolution to proceedings may result in a denial

---

[1] Similarly, in applying *Lujan*'s holding to the property interest of the former managers of a city-owned cemetery whose management contract was terminated by the city, the Ninth Circuit reasoned that because the "contract here has not given rise to greater interest than the contract itself," the deprivation was a mere contractual injury that could be adequately protected by a state breach of contract suit. *DeBoer*, 287 F.3d at 750.

of due process. *Loudermill*, 470 U.S. at 547. *See also DeVito v. Chicago Park Dist.*, 972 F.2d 851 (7th Cir. 1992) (holding that post-termination hearing must be "prompt" and that, under guidelines for determining promptness for post-suspension hearing enunciated in *FDIC v. Mallen*, 486 U.S. 230 (1988), a year's delay in holding a post-termination hearing did not deny terminated public employee due process). Similarly, while there is no automatic right to reinstatement, it is "normally an integral part of the remedy for a constitutionally impermissible employment action." *Reeves v. Claiborne County Bd. of Educ.*, 828 F.2d 1096, 1101 (5th Cir. 1987).[2] *Cf. United Food & Commercial Workers Local 100A v. John Hofmeister & Son, Inc.*, 950 F.2d 1340 (7th Cir. 1991) ("Reinstatement and back pay awards are common remedies in wrongful discharge cases."). Further, as the Sixth Circuit has noted, "employment, especially in a career such as education, is more than a way to make money; it is a profession with significant non-monetary rewards," and consequently money damages may be a "hollow victory." *Banks v. Burkich*, 788 F.2d 1161, 1164 (6th Cir. 1986) (citing *Allen v. Autauga County Bd. of Educ.*, 685 F.2d 1302, 1306 (11th Cir. 1982)). Thus, when a public employee terminated for cause has a present entitlement, and when the only available post-termination remedy is the opportunity to bring a state breach of contract suit, the pre-termination hearing to which such an employee is entitled must fully satisfy the due process requirements of confrontation and cross-examination in addition to the minimal *Loudermill* requirements of notice and an opportunity to be heard.

2.

[2] While *Reeves* involved a teacher challenging a reassignment on the grounds that it violated the First Amendment, the Fifth Circuit's treatment of reinstatement applies here as well.

After reviewing the facts of this case, we conclude that Baird has established his present entitlement. Baird's interest is distinguishable from those in *Lujan* and its progeny; he was terminated in the first year of a three-year contract, and had a protected property interest in remaining in office under his contract for its full term and in being compensated accordingly.[3] *See Lujan*, 532 U.S. at 196. Baird's present entitlement also meant that he was entitled to pursue reinstatement promptly if his rights had been violated. Accordingly, the Board was obligated to provide a pre-termination hearing that fully complied with due process. This it failed to do.

The Board takes credit for "generous" pre-termination hearing procedures to a degree such that one might envision the proceedings as a veritable cornucopia of due process protections. In reality, however, the Board's gestures seem to have been just that—gestures. While Baird was ostensibly afforded the opportunity to call and question witnesses, the Board effectively emasculated this provision by refusing to furnish him with the names of district employees who had acted as undercover school board informants. Baird was also allowed to question Board members—but only about matters as to which they had spoken. What the Board gave to Baird with the left hand, it seemed to take away with the right, leaving Baird with a pre-termination hearing that may have satisfied a bare-bones *Loudermill* standard, but little else.[4] And the Board has offered no reason why more

---

[3] Because we have held that a pecuniary loss is an actionable deprivation of property, we need not reach the issue whether the termination's adverse effect on Baird's future employment prospects is also an actionable deprivation. *Head*, 225 F.3d at 803 (citing *Swick v. City of Chicago*, 11 F.3d 85, 86-88 (7th Cir. 1993)).

[4] This finding is supported by an application of the factors enunciated in *Mathews*. The threat of loss of livelihood coupled

(continued...)

generous measures under the *Mathews* criteria might have been difficult or impossible to supply.

We are aware that Baird presumably does not *now* as a practical matter pursue reinstatement as a remedy. However, this does not alter our analysis. The kind of remedies that conform to due process must be available promptly and must generally include the possibility of reinstatement. Otherwise they are not adequate to address the loss of a present entitlement.

---

[4] (...continued)
with an opportunity to promptly pursue reinstatement are the primary private concerns of a public employee who stands to be terminated, although the impact of a 'for cause' termination on future employment prospects is serious as well. A public employee has a right to verify the accuracy of the purported cause(s) of termination. The opportunity to confront and cross-examine accusers, a cornerstone of our adversary system, assists in resolving disputes over facts giving rise to the termination or indeed over whether the termination itself is merited, and so is key to preventing the deprivation of a constitutionally protected property interest. While the right to confront and cross-examine witnesses is not absolute in the civil context under *Catlett v. Woodfin*, 13 Fed. Appx. 412 (7th Cir. 2001), such an opportunity must be afforded to terminated public employees with present entitlements, whose pre-termination hearings must fully comport with due process when no other procedural safeguards exist. Finally, it is expensive and time-consuming to hire and fire, and so the government also has an interest in verifying that the purported "cause" of termination is legitimate. It is more efficient to ensure that a pre-termination hearing comports with due process when an employee to be terminated "for cause" possesses a present entitlement than it is to defend a lawsuit.

3.

In reaching this conclusion, we find persuasive the reasoning of *McClure v. Independent School District No. 16*, 228 F.3d 1205 (10th Cir. 2000), in which a principal terminated under a one-year contract was afforded only a minimal pre-termination hearing in which the district attorney presented live witnesses and sought to introduce accusatory affidavits from identified district employees. The Tenth Circuit found that the terminated principal was entitled to confront and cross-examine those individuals "whose work deprives a person of his livelihood." *McClure*, 228 F.3d at 1211. *McClure* underscores the importance of cross-examination here, for the opportunity for confrontation was even more fully denied here where Baird was deliberately prevented from ascertaining the identities of his accusers.

Moreover, Seventh Circuit precedent is to the same effect. We have never held that a state breach of contract action provides a terminated public employee with adequate due process *when that employee possessed a present entitlement*. The present case is immediately distinguishable from other cases cited by the Board. The Board's invocation of *Strasburger v. Board of Education, Hardin County Community Unit School District*, 143 F.3d 351 (7th Cir. 1998), is simply not persuasive since *Strasburger*, primarily concerned with substantive due process, essentially held that a terminated public employee challenging his termination on procedural due process grounds need only show that he had been deprived of a protected interest and that there had been a failure of due process. *Id.* at 358. Where a present entitlement is involved, a post-deprivation breach of contract suit cannot adequately remedy due process deficiencies.

The Board's reliance on *Schacht v. Wisconsin Department of Corrections*, 175 F.3d 497, 503 (7th Cir. 1999), and *Papapetropoulous v. Milwaukee Transport Services, Inc.*, 795 F.2d 591 (7th Cir. 1986), is similarly unavailing. *Schacht*

is inapposite because in that case we held that a terminated prison guard possessed adequate due process remedies under Wisconsin law because he could pursue reinstatement, back pay, attorneys' fees and costs through the Wisconsin Personnel Commission. 175 F.3d at 503. *Papapetropoulous* involved a terminated bus driver who was held not to have been denied due process when a federal arbitrator cut short his cross-examination of an emotionally distraught witness in a federal pre-termination arbitration hearing convened under union guidelines. 795 F.2d at 598-600. We stated in the purest dicta that a plaintiff with a protected property interest who has an adequate state remedy is not deprived of due process, and noted that the driver could have brought a breach of contract action in state court against his employer. *Id.* at 601 n.14. *Papapetropoulous*, which clarified when a contract suit is adequate, predates *Lujan* by fifteen years and is distinguishable on several grounds: it reviewed an arbitrator's decision in a pre-termination hearing held pursuant to a union contract; Papapetropoulous did not challenge the adequacy of a state breach of contract action as a post-termination remedy and was afforded a hearing that provided due process; the language at issue was footnote dicta, quite unnecessary to our holding.

B.

Resolving the central issue whether Baird's pre-termination hearing provided adequate due process does not end our inquiry. We must also address an issue that is dear to the heart of every lawyer seeking to bolster more elaborate arguments: waiver. The Board not unpersuasively argues that Baird waived the right to contest the adequacy of his pre-termination hearing on due process grounds when he failed to attend the hearing. In response, Baird contends that he did attend the hearing to object to its procedures, and, moreover, claims that he was not legally required to

attend to preserve his right to object when he had received advance notice that the hearing would be merely a kangaroo court.

We have frequently held that terminated employees who do not avail themselves of pre-termination hearings waive their right to contest the adequacy of such hearings. *See Fern v. Thorpe Pub. Sch.*, 532 F.2d 1120, 1131-32 (7th Cir. 1976) (holding schoolteacher to be terminated for cause waived his claim of procedural due process violation when he knew the time, place and purpose of the pre-termination hearing before the school board but chose not to attend after conferring with his counsel) (internal citations omitted). Baird's conduct seems to lie somewhere between the green of attendance and the red of nonattendance. Baird did not participate in the discussion of the merits held at the hearing, but he and his attorney had requested the Board to implement procedures comporting with due process; when the Board refused Baird's requests, he attended the hearing, but remained only to object to the procedures. It would be difficult to see this as a default that automatically waives further objection as a matter of law.

Although the issue may be close, we conclude that Baird did not waive his right to contest the adequacy of the hearing on due process grounds. The obvious deficiency of the procedures offered in the instant case, and the fact that Baird did appear to state his objection to these procedures, distinguishes it from *Fern* and similar cases. Seventh Circuit authority establishes only that the right to object to an arguably deficient hearing is waived when an employer offers a pre-termination hearing and a public employee facing termination fails to accept the offer by failing to appear. *Ryan v. Illinois Dep't of Children & Family Serv.*, 185 F.3d 751, 761 (7th Cir. 1999). *See also Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995) ("employee cannot claim lack of due process when his employer offered him such a pre-termination hearing and he refused to attend."); *Cliff v. Bd. of Sch.*

*Comm'rs of City of Indianapolis*, 42 F.3d 403, 414 (7th Cir. 1994) ("the right to such a hearing is waived when an employer offers a pre-termination hearing and the employee fails to accept."). Here, Baird did not fail to accept the hearing but appeared and sought to obtain a fairer one; he did attend for the purpose of objecting to the truncated procedures. The Board apparently had no intention of relaxing its procedural strictures. And the hearing would still have missed full due process by a country mile: even if Baird had learned of the informants' identities at his hearing, it would have been too late to confront and cross-examine them. He would still have been forced to construct a blind defense. Ignorant of the identities of his accusers, Baird would likely have been terminated whether or not he chose to participate in the hearing after objecting to its procedures, and it is hard to see how he could mount a rational defense without more information about the charges. Offering such a toothless procedure may have met minimum *Loudermill* requirements *if there had been full post-termination due process*, but it is hard to see Baird's limited participation as a waiver as a matter of law.

Precedent establishes that, when a pre-termination hearing is offered, "the offeree should assume that it will be a fair hearing until the offeror indicates otherwise." *Fern*, 532 F.2d at 1133 (citing *Suckle v. Madison Gen. Hosp.*, 499 F.2d 1364, 1367 (7th Cir. 1974). Baird contends that he was not obligated to participate in the hearing because the presumption of fairness evaporated after the Board notified him of the hearing procedures and denied his request for additional procedures. This argument may overstate the appropriate position. *Fern* and *Suckle* are silent as to the propriety of conduct after a presumption of a fair hearing is apparently belied by the offeror's conduct. We believe the *presumption* of fairness continues and the plaintiff bears the risk of waiver, but under the present facts, when the plaintiff has requested reasonable safeguards and has been flatly denied

both before and at the hearing and where nothing useful could apparently be gained by continuing participation, we will not find a waiver as a matter of law.

C.

Having found that the Board is not entitled to summary judgement on the issue of violation of Baird's due process rights and that Baird did not waive, as a matter of law, his right to contest the adequacy of the hearing on due process grounds, we turn finally to the question, which was not addressed by the district court, whether the Board members qualify for absolute or qualified immunity. Absolute immunity attaches to "all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1988). The Board contends that its individual members are absolutely immune from liability since various discrete actions in firing Baird—namely the determination of rules and procedures, participation in the pre-termination hearing and individual decisions to terminate Baird—were legislative acts. The issues raised by this appeal are, however, a totality involving the termination of an employee, which is an administrative act. The evidence does not establish that the Board members are entitled to legislative immunity.

Nor do Board members appear to be entitled to qualified immunity, which protects public officials who exercise discretionary or policymaking functions from liability in damages. *Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 815-16 (7th Cir. 2001). The district court did not reach this issue. However, public officials are entitled to qualified immunity if their actions violate "clearly established statutory or constitutional rights then known to a reasonable officer." *Id.* at 16. Under the two-step analysis enunciated by the Supreme Court in *Saucier v. Katz*, 531 U.S. 194, 201 (2001), we first assess whether "the state actor's

conduct violated a constitutional right when viewed in the light most favorable to the party asserting the injury." If such a violation exists, we must determine whether the right violated was clearly established. *Id.*

We have already found that the Board violated Baird's due process rights by according him a hearing whose procedures were severely deficient. Thus, we proceed directly to the question whether Baird's rights were clearly established. We conclude that they are. A right must be established at the "appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 609, 615 (1999). Our inquiry is defined by whether "it would be a clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 531 U.S. at 202. Qualified immunity thus affords public officials a certain leeway in their actions; "the concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular . . . conduct." *Id.* at 205. Reduced to its essential elements, if the public official's "mistake as to what the law requires is reasonable, the official is entitled to the immunity defense." *Id.*

Determining the reasonableness of a "mistake" does not necessitate comparison to a precedent that squares in every detail with the present case. *See Ulichny v. Merton Comm. Sch. Dist.*, 249 F.3d 686, 706 (7th Cir. 2001) ("It is not necessary for liability, however, that an identical factual situation had been legally decided adverse to the officer."). As earlier discussed, numerous cases from *Perry v. Sindermann* to *Loudermill* to *Lujan*—a case the defendants rely on to justify their conduct—have defined the contours of what process is due to a public employee who is to be terminated. Given the quality and volume of this precedent, we cannot determine on this record that the Board's conduct was a reasonable mistake, thereby establishing the defense of qualified immunity.

III.

It is always pleasant when the troublesome process of terminating an employee whose job performance is perceived as unsatisfactory can be concluded with a polite handshake and a heartfelt "fare-thee-well." Unfortunately, that ideal firing most often remains just that—an ideal. Here, not only did goodwill go by the boards but elementary fairness fell through the cracks. A lawsuit for breach of contract simply does not provide the due process which is missing elsewhere when a present entitlement is at stake.

For the above reasons we REVERSE and REMAND for further proceedings consistent with this opinion.

A true Copy:

Teste:

*Clerk of the United States Court of Appeals for the Seventh Circuit*